UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNIQUE LOTUS GEMS and                           ECF CASE
GEMDIAM,

              Plaintiffs,                 Case No. 18-cv-10808

   –against–                               **COMPLAINT**

GHOLIAN ENTERPRISES INC.,
FARID GHOLIAN a/k/a ROB
GHOLIAN, and AHARON
AKUSH,

              Defendants.
------------------------------------------------------x

    Plaintiffs, Unique Lotus Gems and Gemdiam, by their attorneys, Kazlow & Kazlow, for

their Complaint against defendants, Gholian Enterprises Inc., Farid Gholian a/k/a Rob Golian and

Aharon Akush, allege as follows:

### Parties

    1. Plaintiff, Unique Lotus Gems ("Unique Lotus"), is, and at all relevant times was, a

foreign business entity, formed and existing under the laws of Hong Kong, which maintains its

principal office and place of business at Unit 1, 8F, Guardforce Centre, No. 3 Hok Yuen Street

East, Hungom, Kowloon, Hong Kong.

    2. Plaintiff, Gemdiam ("Gemdiam"), is, and at all relevant times was, a foreign business

entity, formed and existing under the laws of Hong Kong, which maintains its principal office

and place of business at Suite B, 14th Floor, Hody Commercial Building, No. 6-6A, Hart Avenue,

T.S.T., Kowloon, Hong Kong.

    3. Upon information and belief, defendant, Gholian Enterprises Inc. ("Gholian

Enterprises"), is, and at all relevant times was, a domestic business corporation formed and

existing under the laws of the State of New York, which maintains its principal office and place

of business at 62 West 47th Street, Suite 14A-15, New York, NY 10036.

4. Upon information and belief, defendant, Farid Gholian a/k/a Rob Gholian ("Gholian"),

is, and at all relevant times was, an individual who maintains an actual place of business and

employment c/o Gholian Enterprises Inc., at 62 West 47th Street, Suite 14A-15, New York, NY

10036, and is believed to reside at 6 Carriage Road, Great Neck, NY 11024.

5. Upon information and belief, defendant, Aharon Akush ("Akush"), is, and at all

relevant times was, an individual who maintains an actual place of business and employment c/o

Gholian Enterprises Inc., at 62 West 47th Street, Suite 14A-15, New York, NY 10036, and is

believed to reside at 2076 9th Street, Brooklyn, NY 11223.

## Jurisdiction and Venue

6. This Court has subject matter jurisdiction in this action due to the diversity of the

citizenship of the parties, pursuant to 28 U.S.C. § 1332(a)(1), and venue is proper in this district

pursuant to 28 U.S.C. § 1391(b)(2).

## Background Facts

7. Unique Lotus and Gemdiam are, and at all relevant times were, each in the business of

selling precious gem stones.

8. Upon information and belief, Gholian Enterprises is, and at all relevant times was,

among other things, in the business of importing precious gem stones from abroad and selling

them in the United States.

9. Upon information and belief, Gholian and Akush are, and at all relevant times were,

both shareholders, directors, officers and/or managers of Gholian Enterprises.

2

10. In 2016 and 2017, the defendants, while acting in concert, and as co-conspirators, executed a fraudulent scheme and plan in which they initially made small purchases of gem stones from the plaintiffs in order to establish trust and credit, then purchased, or took on consignment, gem stones having a substantially higher value, for which they had no intention to pay in full, using worthless post-dated checks, including checks from a closed account, as security for payment.  Upon information and belief, defendants intentionally executed their scheme and plan so that they could quickly obtain money by reselling or pawning some of the plaintiffs' gem stones for substantially less than their prices, or by convincing the plaintiffs to pay for the redemption of their merchandise from third-parties.  As a result, each of the plaintiffs sustained hundreds of thousands of dollars in damages.

### Unique Lotus' Transactions with the Defendants

11. On or about April 14, 2016, Gholian and Akush visited Unique Lotus' office in Hong Kong, upon the reference of a customer of Unique Lotus named Paraton China.  While they were at Unique Lotus' office, Gholian and Akush selected three sapphires, and took them on consignment, for two days, on behalf of Ghlolian Enterprises.

12. On or about April 16, 2016, Gholian and Akush returned to Unique Lotus' office and purchased the three sapphires selected on or about April 14, 2016 for $30,030.00, on behalf of Gholian Enterprises, leaving two post-dated checks, dated June 15, 2016 and July 15, 2016, in the amount of $15,015.00 each, as security for payment.  Gholian signed the post-dated checks and Unique Lotus' invoice for the transaction.

13. On or about June 27, 2016, Gholian and Akush returned to Unique Lotus' office and purchased two more sapphires for $32,904.00, on behalf of Gholian Enterprises, leaving three

3

post-dated checks, two dated September 30, 2016, and one dated October 30, 2016, each in the amount of $10,968.00, as security for payment. Gholian signed the post-dated checks and Akush signed Unique Lotus' invoice for the transaction. Before they left Unique Lotus' office, on or about June 27, 2016, Gholian and Akush told Sunil Jain, the owner of Unique Lotus, that they would pay for the sapphires purchased on April 16, 2016 within a few days' time.

14. On or about June 28, 2016, Gholian and Akush returned to Unique Lotus's office, and paid Unique Lotus $15,015.00 in cash, taking back one of the post-dated checks issued on or about April 16, 2016.

15. On or about June 29, 2016, Gholian and Akush returned to Unique Lotus' office, and paid Unique Lotus another $15,015.00 in cash, taking back the remaining post-dated check issued on or about April 16, 2016.

16. On or about August 15, 2016, Gholian and Akush returned to Unique Lotus' office and purchased a 16.32 carat pear-shaped sapphire (the "16.32 Carat Sapphire") for $46,512.00 on behalf of Gholian Enterprises, leaving three post-dated checks dated October 15, 2016, November 15, 2016 and December 15, 2016, in the amount of $15,504.00 each, as security for payment. Gholian signed the post-dated checks and Akush signed Unique Lotus' invoice for the transaction.

17. At the time of the purchase on or about August 15, 2016, Akush told Sunil Jain that he would return the 16.32 Carat Sapphire at the September Hong Kong Jewellery & Gem Fair 2016 (the "Hong Kong Show"), which was scheduled to be held in Hong Kong from September 13, 2016 through September 17, 2016, if his customer in the United States did not want it. However, the 16.32 Carat Sapphire was not returned to Unique Lotus at the Hong Kong Show, or

any time thereafter.

18. In addition to the 16.32 Carat Sapphire, Gholian and Akush took four more sapphires and two emeralds, having a total value of $101,052.00, on consignment for Gholian Enterprises on or about August 15, 2016.  The "On Trust" memorandum for the consignment, which Akush signed, contained a legend stating that, "I/We received On Trust from Unique Lotus Gems Kowloon, Hong Kong The following gems/jewellery as mentioned below.  This/These remain the property of Messrs Unique Lotus Gems and I/We promise to return it/them at first notice. I/We hold myself/ourselves responsible for any loss or damage, till the above Trust is discharged."

19. On or about September 13, 2016, Gholian and Akush visited Unique Lotus' booth at the Hong Kong Show with a third man named "Mike," at which time Akush told Sunil Jain that he would return to settle with him concerning the 16.32 Carat Sapphire in a few more days. However, Akush failed to do so.

20. While they were at Unique Lotus' booth at the Hong Kong Show, on or about September 13, 2016, Gholian and Akush purchased additional stones from Unique Lotus on behalf of Gholian Enterprises.  Gholian signed the invoice for a pair of pear-shaped emeralds, totaling 15.70 carats, and priced at $47,100.00, while Akush signed the invoice for a 12.52 carat sapphire (the 12.52 Carat Sapphire) priced at $56,966.00.  As security for these purchases, Gholian and Akush left three post-dated checks, signed by Gholian, dated November 30, 2016, December 30, 2016 and January 30, 2017, for the emeralds, and three more post-dated checks, signed by Gholian, dated December 15, 2016, January 15, 2017 and February 15, 2017, for the 12.52 Carat Sapphire.

5

21. In addition, while they were still at Unique Lotus' booth at the Hong Kong Show, on or about September 13, 2016, Akush took five more stones, having a total price of $98,262.00, on consignment from Unique Lotus on behalf of Gholian Enterprises, for the stated purpose of showing them to customers who were staying in a hotel in Hong Kong. The "On Trust" memorandum for the consignment, which Akush signed, contained a legend stating that, "I/We received On Trust from Unique Lotus Gems Kowloon, Hong Kong The following gems/jewellery as mentioned below. This/These remain the property of Messrs Unique Lotus Gems and I/We promise to return it/them at first notice. I/We hold myself/ourselves responsible for any loss or damage, till the above Trust is discharged." Akush told Sunil Jain that he would settle with him concerning the consigned stones the next day. However, Akush failed to do so.

22. On or about September 18, 2016, Gholian paid $11,000.00 in cash to Unique Lotus as a partial payment for the sapphires purchased on or about June 27, 2016. That payment covered the first of the post-dated checks that Gholian and Akush had given to Unique Lotus on June 27, 2016, as security for payment.

23. However, after Unique Lotus deposited the second post-dated check from the June 27, 2016 transaction, in or about early October 2016, it was informed by its bank, on or about October 11, 2016, that the check was returned unpaid due to insufficient funds. Unique Lotus was charged a fee in the amount of $32.29, by its bank, with respect to the dishonored check.

24. Following the return of the dishonored check, Unique Lotus repeatedly contacted Gholian and Akush to request payment of the amounts due to Unique Lotus from Gholian Enterprises. As a result, Unique Lotus received a wire transfer in the amount of $10,981.60 from Gholian Enterprises, on or about October 28, 2016, and a second wire transfer in the amount of

$9,981.60, on or about November 11, 2016.  Unique Lotus did not receive any payments from Gholian Enterprises after November 11, 2016.

25. In or about late January 2017, while Sunil Jain was preparing to travel to the 2017 International Gem & Jewelry Show, held in Tucson, Arizona, from January 28, 2017 through February 5, 2017 (the "Tuscon Show"), he received a series of telephone calls from Akush and "Mike."  In those calls, Akush and "Mike" told Sunil Jain that the 12.52 Carat Sapphire, and five of the stones that had been taken on consignment on or about August 15, 2016 and September 13, 2016 (the "Five Consigned Stones"), had been sent to a customer in Miami, Florida, whose son had pawned them.  However, Akush and "Mike" failed to identify the customer to whom the stones had been sent, or the pawn shop where they had been pawned.

26. According to Akush and "Mike," the six stones could be redeemed from the pawn shop for $60,000.00.  Subsequently, they told Sunil Jain that the 12.52 Carat Sapphire was no longer available to be redeemed from the pawn shop, and that the price to redeem the Five Consigned Stones stones was reduced to $40,000.00, which Akush urged Sunil Jain to pay, promising that he would reimburse Unique Lotus for its payment.  Since the Five Consigned Stones had a total price of $86,648.00, Sunil Jain agreed to pay $40,000.00 to recover them.

27. Akush brought the Five Consigned Stones to Unique Lotus' booth at the Tuscon Show, where Sunil Jain inspected them, and sealed them in a plastic bag, which remained in Akush's custody pending payment.

28. After the Tuscon Show, in or about February 2017, Sunil Jain traveled to New York City, where Akush called him, on or about February 10, 2017, to set up an appointment for the redemption of the Five Consigned Stones.  Sunil Jain arranged for an attorney named David K.

Shuffman to accompany him to the appointment.  Sunil Jain and David Shuffman were met on 47th Street, in Manhattan's jewelry district, by a man who did not identify himself.  The man took them to an office in a nearby building where they were joined by another unidentified man.

29. The two unidentified men produced the sealed plastic bag containing the Five Consigned Stones.  Sunil Jain opened the bag and inspected the stones to confirm their authenticity.  Then he paid the men $20,000.00 in cash from the proceeds of Unique Lotus' sales at the Tuscon Show and an additional $20,000.00 in cash that he had borrowed from friends. The two unidentified men refused to write a receipt for the cash.  Instead, they instructed Sunil Jain and David Shuffman to take the stones and leave.

30. Akush never reimbursed Unique Lotus for the $40,000.00 that it paid to redeem the Five Consigned Stones.

31. After the Five Consigned Stones were redeemed, Sunil Jain and David Shuffman negotiated with Gholian and Akush concerning the payment of Gholian Enterprises' debt to Unique Lotus.  On or about February 16, 2017, Sunil Jain and David Shuffman met with Gholian, Akush and a third man at David Shuffman's law office, located at 16 West 46th Street, 7th Floor, New York, NY 10036.  During their meeting, Sunil Jain and Gholian executed a written agreement, prepared by David Shuffman, in which Gholian Enterprises acknowledged a debt to Unique Lotus in the total amount of $303,062.00, consisting of $190,396.00 for the stones Gholian Enterprises had purchased, and $112,666.00 for the stones that Gholian and Akush had taken on consignment on behalf of Gholian Enterprises (the "February 16th Agreement").

32. Under the February 16th Agreement, Gholian Enterprises promised to pay the balance

8

due in monthly installments of $15,000.00 each, on the tenth day of each month beginning on

April 10, 2017. The payments were required to be made by checks payable to David Shuffman.

Gholian therefore issued and signed thirteen post-dated checks payable to David Shuffman, each

in the amount of $15,000.00, dated on the tenth day of each month from April 2017 through

April 2018. The checks were all drawn on an account of Gholian Enterprises at Citibank, N.A.

(the "Citbank Account"). Upon David Shuffman's receipt of the new post-dated checks, Sunil

Jain returned the post-dated checks previously given to Unique Lotus to Gholian.

33. On or about April 10, 2017, David Shuffman deposited the first of the thirteen post-

dated checks drawn on the Citibank Account, but it was returned unpaid because payment had

been stopped by the account holder.

34. On or about April 18, 2017, David Shuffman sent a letter to Gholian advising him

that Gholian Enterprises was in default of its obligations under the February 16th Agreement as a

result of the payment of the check dated April 10, 2017 having been stopped. Mr. Shuffman's

letter gave Gholian Enterprises ten days in which to cure its default. However, Gholian

Enterprises failed to cure its default, and has failed to make any further payments to Unique

Lotus, or to return any of Unique Lotus' merchandise.

35. The total of Unique Lotus' losses as a result of its transactions with the defendants is

$304,217.09, which amount includes the unpaid portion of the price of the stones that Gholian

and Akush purchased on behalf of Gholian Enterprises on June 26, 2016, August 15, 2016 and

Septmber 13, 2016, the price of the unreturned stones that Gholian and Akush took on

consignment on behalf of Gholian Enterprises on August 15, 2016 and September 13, 2016, the

cash that Unique Lotus paid to redeem the Five Consigned Stones, and the fee charged by Unique

Lotus' bank with respect to the check that was dishonored in October 2016.

## Gemdiam's Transactions with the Defendants

36. In or about early August 2016, an employee of Gemdiam met Akush at the office of the Malca-Amit Far East Ltd., in Hong Kong.  Before they parted, Akush expressed an interest in doing business with Gemdiam.

37. On or about August 15, 2016, Gholian and Akush visited Gemdiam's office in Hong Kong, where they purchased a cut emerald for $15,953.00 on behalf of Gholian Enterprises, leaving post-dated checks as security for payment, which was due on or before October 16, 2016. Akush signed Gemdiam's invoice for the transaction.

38. On or about September 13, 2016, Gholian and Akush returned to Gemdiam's office in Hong Kong, where they paid the price of the emerald purchased on August 15, 2016, in cash, and took back the post-dated checks that they had left with Gemdiam in connection with that purchase.

39. While they were at Gemdiam's office, on or about September 13, 2016, Gholian and Akush purchased two more cut emeralds (the "September 13th Emeralds"), on behalf of Gholian Enterprises, for a total of $92,644.00, which was to be paid within 90 to 120 days.  Once again, Gholian and Akush left post-dated checks as security for payment, and Akush signed Gemdiam's invoice for the transaction.

40. On or about December 22, 2016, Akush returned again to Gemdiam's office in Hong Kong, where he paid half the purchase price of the September 13th Emeralds, 2016, *i.e.* $46,322.00, in cash, and took back one of the post-dated checks that had been left with Gemdiam in connection with that purchase.

41. While he was at Gemdiam's office, on or about December 22, 2016, Akush purchased another cut emerald, weighing 11.86 carats (the "11.86 Carat Emerald") on behalf of Gholian Enterprises for $237,200.00, which was to be paid withing 60 to 90 days, and left two post-dated checks, dated February 22, 2017 and March 22, 2017, in the amount of $118,600.00 each, as security for payment. The post-dated checks were signed by Akush, and drawn on the Citibank Account. Akush also signed Gemdiam's invoice for the transaction.

42. Also on or about December 22, 2016, Akush took two more cut emeralds, having a total price of $83,030.00, on consignment for Gholian Enterprises from Gemdiam. In connection with the consignment, Akush signed a Receipt & Bailment Note which states, "Received the above goods from GEMDIAM on trust and bailment. These goods are returnable and remain the property of 'GEMDIAM' unless paid for and I/We are responsible for the loss or damage of the goods due to any cause whatsoever."

43. Neither Gholian nor Akush returned to Gemdiam's office in Hong Kong after December 22, 2016.

44. Upon information and belief, on or about January 10, 2017, Gholian Enterprises consigned the 11.86 Carat Emerald to Gold 7 of Miami LLC ("Gold 7") for a price of only $180,000.00, just 19 days after it was purchased from Gemdiam for $237,200.00.

45. On or about January 25, 2017, Akush returned one of the cut emeralds that he had taken on consignment on December 22, 2017, to Gemdiam, at Arun Jain's request, by delivering it to Paresh Jain, the brother-in-law of Gemdiam's owner, Arun Jain, at the office of Paresh Jain's company, GemWave Inc. ("GemWave"), located at 36 W. 44th Street #1103, New York, NY 10036.

46. However, on or about January 31, 2017, at the Tucson Show, Akush met with Arun Jain, and told him that Gholian Enterprises would purchase the other cut emerald that he had taken on consignment on December 22, 2017, which weighed 5.40 carats (the "5.40 Carat Emerald"), at the price of $48,600.00.  The price of the 5.40 Carat Emerald was to be paid within 90 to 150 days.  Akush gave Mr. Arun three post-dated checks, dated April 1, 2017, May 1, 2017 and June 1, 2017, in the amount of $16,200.00 each, as security for payment.  The post-dated checks were signed by Akush, and drawn on the Citibank Account.

47. To date, Gholian Enterprises has failed to pay any part of the agreed price of the 5.40 Carat Emerald to Gemdiam.

48. On or about February 6, 2017, after the Tuscon Show, Arun Jain met Akush at GemWave's office in Manhattan.  During their meeting, Arun Jain asked Akush for the balance of the amount due for the September 13th Emeralds.  Akush told Arun Jain that the September 13th Emeralds had been given to a customer whose son had pawned them.  Akush did not tell Arun Jain the name of Gholian Enterprises' customer, or the address of the pawn shop.  However, he did tell Arun Jain that Gemdiam could redeem the September 13th Emeralds for $63,000.00.  After Arun Jain refused to pay $63,000.00 to redeem the September 13th Emeralds, the amount was reduced to $52,000.00, which Arun Jain provided to Akush, who subsequently returned the September 13th Emeralds to Gemdiam.

49. The difference between the amount which Gemdiam paid to recover the September 13th Emeralds, *i.e.* $52,000.00, and the partial payment that Gholian Enterprises made for the September 13th Emeralds on December 22, 2016, *i.e.* $46,322.00, is $5,678.00.  To date, Gholian Enterprises has not compensated Gemdiam for that loss.

50. During their meeting at GemWave's office on or about February 6, 2017, Arun Jain also asked Akush about payment for the 11.86 Carat Emerald. Akush warned Arun Jain not to cash the Citibank checks that he had given to Gemdiam as security for payment for the 11.86 Carat Emerald because the funds in Gholian Enterprises' account at Citibank N.A. were insufficient to cover them. Akush assured Arun Jain that Gholian Enterprises would pay for the 11.86 Carat Emerald in a few days, without disclosing to Arun Jain that the 11.86 Carat Emerald had been consigned by Gholian Enterprises to Gold 7 at a lower price than Gholian Enterprises was required to pay to Gemdiam. Notwithstanding Akush's assurance of payment, Gholian Enterprises failed to pay Gemdiam for the 11.86 Carat Emerald.

51. In or about April 2017, Akush told Arun Jain, during another conversation about payment for the 11.86 Carat Emerald, that the 11.86 Carat Emerald had been pawned, but could be recovered for $160,000.00. Arun Jain refused to pay $160,000.00 to recover the 11.86 Carat Emerald and continued to insist on payment in full for that stone.

52. Subsequently, during the Las Vegas Antique Watch & Jewelry Show, held in Las Vegas, Nevada between June 5, 2017 and June 8, 2017 (the "Las Vegas Show"), Arun Jain met Akush and a representative of Gold 7 at Gold 7's booth, at which time it was agreed that Gemdiam would pay $120,000.00 to Gold 7 to recover the 11.86 Carat Emerald. Arun Jain inspected the 11.86 Carat Emerald, which Gold 7's representative had brought to Las Vegas, and sealed it in a plastic bag that was to remain in Gold 7's custody until the time of payment.

53. Also during the Las Vegas Show, Arun Jain complained to Akush about the losses Gemdiam had suffered as a result of its dealings with Gholian Enterprises. Akush responded that he would provide Arun Jain with a series of $20,000.00 checks drawn on a bank in Hong Kong

in order to pay off Gholian Enterprise's debts to Gemdiam, so that Arun Jain would not need to worry about Gemdiam's losses.

54. On or about June 12, 2017 GemWave wired $120,000.00 to Gold 7 on behalf of Gemdiam at Arun Jain's request, and Akush came to GemWave's office in Manhattan with Gold 7's representative, who delivered the 11.86 Carat Emerald to Arun Jain.  In addition, Akush gave Arun Jain twelve checks, each in the amount of $20,000.00, which were dated the 10th day of each month from July 2017 through June 2018, and drawn on the account of "Gholian Enterprises Limited" at China Citic Bank International Limited, located in Hong Kong (the "China Citic Checks").  Each of the China Citik Checks was signed by Akush.

55. Gemdiam deposited the first of the China Citik Checks on July 10, 2017.  However, the check was returned the next day because the account on which the China Citik Checks were drawn was a closed account.

56. Arun Jain attempted several times to contact Akush after the first of the China Citik Checks was returned, but Akush failed to respond.

57. On or about November 16, 2017, Gholian Enterprises commenced a law suit against Gold 7 in The Circuit Court of Eleventh Judicial Circuit, in and For Miami-Dade County, Florida (the "Gholian-Gold 7 Action").  In its pleadings in the Gholian-Gold 7 Action, Gholian Enterprises alleged:  that it consigned the 11.86 Carat Emerald to Gold 7 at a price of $180,000.00, that Gold 7; that "[d]ue to fluctuations in the emerald market, Gold 7 was only able to sell the emerald to the original third party, for One Hundred Twenty Thousand dollars ($120,000.00);" and that Gold 7 had not paid any portion of the amount that it received for the 11.86 Carat Emerald to Gholian Enterprises.

14

58. However, in a motion to dismiss the Gholian-Gold 7 Action, filed on or about February 2, 2018, Gold 7 denied that it had ever agreed to the price of $180,000.00 for the 11.86 Carat Emerald, and asserted that the actual price for the 11.86 Carat Emerald was actually only $120,000.00, which had been paid in full to Gholian Enterprises.

59. Gholian Enterprises has not made any payments to Gemdiam since December 22, 2016, and has not compensated Gemdiam for the amount that it had to pay to redeem the 11.86 Carat Emerald from Gold 7.

60. Gemdiam's losses as a result of the foregoing transactions with the defendants total $247,472.00, which amount includes: the $5,678.00 difference between the amount that Gemdiam paid to recover the September 13th Emeralds and Gholian Enterprises' partial payment for the September 13th Emeralds; the $13,894.00 profit that Gemdiam would have realized with respect to the September 13th Emeralds if Gholian Enterprises had paid the agreed price of $92,644.00 in full; the $120,000.00 that Gemdiam borrowed from GemWave to recover the 11.86 Carat Emerald; the $59,300.00 profit that Gemdiam would have realized with respect to the 11.86 Carat Emerald if Gholian Enterprises had paid the agreed price of $237,200.00 in full; and the $48,600.00 price of the 5.40 Carat Emerald.

## AS AND FOR A FIRST CLAIM FOR RELIEF
(by both plaintiffs against all defendants)

61. Plaintiffs repeat the allegations set forth in paragraphs 1 through 60, above, as though they were full set forth herein.

62. Gholian and Akush, acting in concert with each other, and on behalf of Gholian Enterprises, expressly and impliedly represented to each of the plaintiffs, on or about the dates

detailed in the preceding paragraphs of this Complaint: that timely payment in full would be made for the gem stones that they purchased; that the post-dated checks which they left as security for payment were good checks, drawn on open bank accounts, which would have sufficient funds and be honored on or after the their respective dates; that the gem stones taken on consignment would be returned if not sold; that various pieces of the plaintiff's merchandise had been pawned by the son of a customer; and that the plaintiffs needed to pay certain amounts to redeem their gem stones from the pawn shops.

63. The foregoing representations were false when made, and were known to the defendants to be false at the time they were made, in that, upon information and belief, Gholian and Akush had no present intention, at the time the representations were made, to pay the price of the plaintiff's merchandise in full, to fund the post-dated checks that they left as security for payment, or to return the consigned merchandise, and instead acted according to a common scheme and plan, in which they intentionally took advantage of the trust that they built up in their initial dealings with the plaintiffs, in order to obtain possession of gem stones worth hundreds of thousands of dollars, without paying for them, so that they could obtain quick cash by selling them for less than their actual price and value, or by selling them back to the plaintiffs under the pretense of helping the plaintiffs to redeem them from third parties.

64. Furthermore, Gholian and Akush knew, and failed to disclose, at the time that they made their express and implied representations concerning the post-dated checks, that those representations were false, in that, upon further information and belief, the bank accounts against which the post-dated checks were drawn were either dormant accounts or closed accounts which did not hold sufficient funds to cover payment of the checks.

65. Moreover, upon further information and belief, Gholian and Akush knew, at the time that they made representations to the plaintiffs concerning the pawning of the plaintiffs' gem stones, by an unnamed customer's son, that those representations were false, in that the stones had not actually been pawned, and did not need to be redeemed from any pawn shop.

66. When they made their various false representations to the plaintiffs, Gholian and Akush acted with the intent to defraud the plaintiffs.

67. The plaintiffs justifiably relied on the defendants false representations to the plaintiffs' detriment, in that the plaintiffs each transferred the possession of gem stones worth hundreds of thousands of dollars into the defendants' possession, and subsequently paid tens of thousands of dollars to redeem their own stones.

68. But for the defendants' false representations, plaintiffs would not have transferred possession of their gem stones to the defendants.

69. Gholian and Akush are both individually  liable to compensate the plaintiffs for the fraud which they perpetrated in the name of Gholian Enterprises, both with respect to the actions that they personally took, and for each other's actions as accomplices.  In addition, Gholian Enterprises is vicariously liable to the plaintiffs for that fraud.

70. As the direct result of the fraud perpetrated by the defendants, Unique Lotus has been damaged by the defendants in the amount of at least $304,217.09, and Gemdiam has been damaged by the defendants in the amount of at least $247,472.00, with the total damages suffered by the plaintiffs being at least $551,689.09.

71. In addition, since the defendants acted with malice towards the plaintiffs in executing their fraudulent scheme, the defendants should be required to pay punitive damages to the

plaintiffs in an amount determined by the Court.

## AS AND FOR A SECOND CLAIM FOR RELIEF
(by both plaintiffs against Gholian and Akush)

72. Plaintiffs repeat the allegations set forth in paragraphs 1 through 71, above, as though they were full set forth herein.

73. Upon information and belief, in or about the period from April 2016 though June 2017, Gholian and Akush conspired with each other by entering into a corrupt agreement to engage in a scheme or plan to deprive plaintiffs of their gem stones and money by means of fraud and the issuance of bad checks, as alleged in the preceding paragraphs of this Complaint.

74. Gholian and Akush each intentionally participated in the conspiracy by performing various overt acts in furtherance of their conspiracy, including, among other things, the making of false promises of payment, the signing of invoices and consignment memoranda, the issuance of numerous worthless post-dated checks, and convincing the plaintiffs to redeem the plaintiff's own gem stones from the third-parties into whose possession they had reportedly been delivered by the defendants.

75. As the direct result of this civil conspiracy, Unique Lotus has been damaged by the Gholian and Akush in the amount of at least $304,217.09, and Gemdiam has been damaged by Gholian and Akush in the amount of at least $247,472.00, with the total damages suffered by the plaintiffs being at least $551,689.09.

76. In addition, since the defendants acted with malice in conspiring against the plaintiffs, and taking actions in furtherance of their conspiracy, the defendants should be required to pay punitive damages to the plaintiffs in an amount determined by the Court.

## AS AND FOR A THIRD CLAIM FOR RELIEF
(by Unique Lotus against Gholian Enterprises)

77. Plaintiffs repeat the allegations set forth in paragraphs 1 through 76, above, as though they were full set forth herein.

78. In the period from April 2016 through September 2016, Unique Lotus and Gholian Enterprises entered into a series of agreements (the "Unique Lotus Agreements") pursuant to which Gholian Enterprises either purchased gem stones from Unique Lotus at agreed prices, or took gem stones having agreed prices on consignment, with the responsibility to return the consigned gem stones to Unique Lotus in the event that they were not sold to third parties and to compensate Unique Lotus if the consigned gem stones were sold, lost or damaged.

79. The Unique Lotus Agreements constituted binding contracts between Unique Lotus and Gholian Enterprises.

80. Unique Lotus performed its obligations under the Unique Lotus Agreements by transferring the purchased and consigned gem stones into the possession, custody and control of Gholian Enterprises.

81. Gholian Enterprises failed to perform its obligations under the Unique Lotus Agreements, in that it failed to pay Unique Lotus in full for the purchased gem stones, failed to honor the post-dated checks that were given to Unique Lotus as security for payment, failed to return the consigned gem stones to Unique Lotus, failed to pay Unique Lotus for the consigned gem stones that it failed to return, and failed to reimburse Unique Lotus for the money that Unique Lotus paid to redeem some of the consigned gem stones, all despite due demand.

82. Unique Lotus has therefore been damaged by Gholian Enterprises' breach of the

Unique Lotus Agreements in the amount of at least $304,217.09.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### (by Unique Lotus against Gholian Enterprises)

83. Plaintiffs repeat the allegations set forth in paragraphs 1 through 82, above, as though they were full set forth herein.

84. In the period from April 2016 through September 2016, Unique Lotus sold gem stones to Gholian Enterprises at agreed prices, and consigned other gem stones, having agreed prices, to Gholian Enterprises with the understanding that Gholian Enterprises would pay for any of the consigned gem stones that it did not return to Unique Lotus.

85. Unique Lotus delivered the gem stones which it sold or consigned to Gholian Enterprises into the possesion, custody or control of Gholian Enterprises.

86. Gholian Enterprises accepted the delivery of the gem stones that it purchased and took on consignment from Unique Lotus, and never revoked its acceptance thereof.

87. Gholian Enterprises failed to pay in full for the gem stones that it purchased from Unique Lotus as payment therefor became due, and failed to pay Unique Lotus for the consigned gem stones that it also purchased from Unique Lotus by failing to return them to Unique Lotus, despite due demand.

88. Unique Lotus is therefore entitled to recover, under Sections 2-709 and 2-710 of the New York Uniform Commerical Code, the unpaid portion of the agreed price of the sold and consigned gem stones which Gholian Enterprises accepted, together with Unique Lotus' incidental damages, in the amount of at least $304,217.09.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
(by Unique Lotus against Gholian Enterprises)

89. Plaintiffs repeat the allegations set forth in paragraphs 1 through 88, above, as though they were full set forth herein.

90. In the period from April 2016 through September 2016, Unique Lotus provided Gholian Enterprises with gem stones with the mutual understanding that Gholian Enterprises would compensate Unique Lotus for the fair and reasonable value of any of the gem stones that Gholian Enterprises failed to return to Unique Lotus within a reasonable period of time.

91. Gholian Enterprises failed to return all of the gem stones provided by Unique Lotus, and also failed to pay Unique Lotus the fair and reasonable value of the gem stones that it did not return, despite due demand.

92. Unique Lotus conferred a further benefit on Gholian Enterprises by paying $40,000.00 to redeem some of the gem stones from a third party.

93. It would be against equity and good conscience to allow Gholian Enterprises to retain the benefit of the gem stones provided by Unique Lotus which Gholian Enterprises failed to return or pay for, or the benefit of the payment made by Unique Lotus to redeem the gem stones that Gholian Enterprises transferred into the possession of the third party.

94. Therefore, under the doctrine of unjust enrichment, Gholian Enterprises should be held liable to Unique Lotus in the amount of at least $304,217.09.

## AS AND FOR A SIXTH CLAIM FOR RELIEF
(by Unique Lotus against Gholian Enterprises)

95. Plaintiffs repeat the allegations set forth in paragraphs 1 through 94, above, as though they were full set forth herein.

96. The February 16th Agreement constituted a binding contract between Unique Lotus and Gholian Enterprises.

97. Unique Lotus performed its obligations under the February 16th Agreement by refraining from taking action against Gholian Enterprises pending payment of Gholian Enterprises' debt to Unique Lotus pursuant to the terms of the February 16th Agreement.

98. Gholian Enterprises breached the February 16th Agreement by failing to make any of the payments which the February 16th Agreement required it to make, and by failing to cure its default after due notice and demand.

99. Unique Lotus has been damaged by Gholian Enterprises' breach of the February 16th Agreement in the amount of at least $303,062.00.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF
### (by Unique Lotus against Gholian Enterprises)

100. Plaintiffs repeat the allegations set forth in paragraphs 1 through 99, above, as though they were full set forth herein.

101. The February 16th Agreement constituted the statement of an account by Unique Lotus of the debt owed to Unique Lotus by Gholian Enterprises.

102. Gholian Enterprises expressly agreed and consented to the correctness of the account stated by Unique Lotus by executing the February 16th Agreement.

103. Gholian Enterprises has not paid any portion of the account stated by Unique Lotus despite due demand.

104. Unique Lotus has thereby been damaged by Gholian Enterprises in the amount of at least $303,062.00.

## AS AND FOR A EIGHTH CLAIM FOR RELIEF
(by Unique Lotus against Akush)

105. Plaintiffs repeat the allegations set forth in paragraphs 1 through 104, above, as though they were full set forth herein.

106. On or about August 15, 2016 and September 13, 2016, Akush signed On Trust memoranda pursuant to which Akush undertook personal responsibility for the gem stones, having a total agreed price of $199,314.00, that Unique Lotus consigned to Gholian Enterprises, and agreed to compensate Unique Lotus for any loss or damage thereto.

107. Of the gem stones that Unique Lotus consigned to Gholian Enterprises in connection with the execution of the On Trust memoranda of August 15, 2016 and September 13, 2016, gem stones having a total agreed price of $112,666.00 have never been returned, paid for, or otherwise accounted for by Gholian Enterprises or Akush, despite due demand.

108. Unique Lotus has therefore been damaged by Akush's breach of his obligations under the On Trust memoranda in the amount of at least $112,666.00.

## AS AND FOR A NINTH CLAIM FOR RELIEF
(by Unique Lotus against Akush)

109. Plaintiffs repeat the allegations set forth in paragraphs 1 through 108, above, as though they were full set forth herein.

110. In or about late January 2016 and early February 2016, Akush advised Sunil Jain that the Five Consigned Stones were in the possession of a pawn shop, but could be redeemed and recovered by Unique Lotus in exchange for a payment in the amount of $40,000.00.

111. Akush promised Sunil Jain that he would personally reimburse Unique Lotus for the $40,000.00 payment if Unique Lotus paid to redeem the Five Consigned Stones.

112. Sunil Jain and Unique Lotus justifiably relied on Akush's promise to reimburse Unique Lotus for its payment to redeem the Five Consigned Stones.

113. Unique Lotus paid $40,000.00 to redeem the Five Consigned Stones, but would not have done so were it not for Akush's promise to reimburse it for that payment.

114. Akush failed to reimburse Unique Lotus for the money which it paid to redeem the Five Consigned Stones, despite due demand.

115. Akush should therefore be held liable to Unique Lotus under the doctrine of promissory estoppel in the amount of at least $40,000.00.

## AS AND FOR A TENTH CLAIM FOR RELIEF
### (by Gemdiam against Gholian Enterprises)

116. Plaintiffs repeat the allegations set forth in paragraphs 1 through 115, above, as though they were full set forth herein.

117. In the period from August 2016 through January 2017, Gemdiam and Gholian Enterprises entered into a series of agreements (the "Gemdiam Agreements") pursuant to which Gholian Enterprises purchased gem stones from Gemdiam at agreed prices.

118. The Gemdiam Agreements constituted binding contracts between Gemdiam and Gholian Enterprises.

119. Gemdiam performed its obligations under the Gemdiam Agreements by transferring the purchased gem stones into the possession, custody and control of Gholian Enterprises.

120. Gholian Enterprises failed to perform its obligations under the Gemdiam Agreements, in that it failed to pay Gemdiam in full for the purchased gem stones, failed to honor the post-dated checks that it gave Gemdiam as security for payment, and failed to reimburse

Gemdiam for the $120,000.00 that Gemdiam paid to redeem the 11.86 Carat Emerald from Gold 7, all despite due demand.

121. Gemdiam has therefore been damaged by Gholian Enterprises' breach of the Gemdiam Agreements in the amount of at least $247,472.00.

## AS AND FOR A ELEVENTH CLAIM FOR RELIEF
### (by Gemdiam against Gholian Enterprises)

122. Plaintiffs repeat the allegations set forth in paragraphs 1 through 121, above, as though they were full set forth herein.

123. In the period from August 2016 through January 2017, Gemdiam sold gem stones to Gholian Enterprises at agreed prices.

124. Gemdiam delivered the gem stones which it sold to Gholian Enterprises into the possession, custody or control of Gholian Enterprises.

125. Gholian Enterprises accepted the delivery of the gem stones that it purchased from Gemdiam, and never revoked its acceptance thereof.

126. Gholian Enterprises failed to pay in full for the gem stones that it purchased from Gemdiam as payment therefor became due, despite due demand.

127. Gemdiam is therefore entitled to recover, under Sections 2-709 and 2-710 of the New York Uniform Commerical Code, the unpaid portion of the agreed price of the gem stones which Gholian Enterprises accepted, together with Gemdiam's incidental damages, in the amount of at least $247,472.00.

## AS AND FOR A TWELFTH CLAIM FOR RELIEF
### (by Gemdiam against Gholian Enterprises)

128. Plaintiffs repeat the allegations set forth in paragraphs 1 through 127, above, as

though they were full set forth herein.

129. In the period from August 2016 through January 2017, Gemdiam provided Gholian Enterprises with gem stones with the mutual understanding that Gholian Enterprises would compensate Gemdiam for the fair and reasonable value of any of the gem stones that Gholian Enterprises failed to return within a reasonable period of time.

130. Gholian Enterprises failed to return all of the gem stones provided by Gemdiam, and also failed to pay Gemdiam the fair and reasonable value of the gem stones that it did not return, despite due demand.

131. Gemdiam conferred a further benefit on Gholian Enterprises by paying $120,000.00 to redeem the 11.86 Carat Emerald from Gold 7.

132. It would be against equity and good conscience to allow Gholian Enterprises to retain the benefit of the gem stones provided by Gemdiam which Gholian Enterprises failed to return or pay for, or the benefit of the payment made by Gemdiam to redeem the 11.86 Carat Emerald from Gold 7.

133. Therefore, under the doctrine of unjust enrichment, Gholian Enterprises should be held liable to Gemdiam in the amount of at least $247,472.00.

## AS AND FOR A THIRTEENTH CLAIM FOR RELIEF
### (by Gemdiam against Gholian Enterprises)

134. Plaintiffs repeat the allegations set forth in paragraphs 1 through 133, above, as though they were full set forth herein.

135. Gemdiam issued invoices to Gholian Enterprises for the gem stones which Gemdiam sold to Gholian Enterprises.

136. Gholian Enterprises received Gemdiam's invoices, and retained them without communicating any timely objections to their content.

137. Gholian Enterprises thereby acquiesced in, and consented to, the correctness of the account stated by Gemdiam with respect to the gem stones that Gholian Enterprises purchased from Gemdiam.

138. Gholian Enterprises has not paid any portion of the account stated by Gemdiam despite due demand.

139. Gemdiam Lotus has thereby been damaged by Gholian Enterprises in the amount of at least $247,472.00.

## AS AND FOR A FOURTEENTH CLAIM FOR RELIEF
### (by Gemdiam against Akush)

140. Plaintiffs repeat the allegations set forth in paragraphs 1 through 139, above, as though they were full set forth herein.

141. On or about December 22, Akush signed a Receipt & Bailment Note pursuant to which Akush undertook personal responsibility for certain gem stones, including the 5.40 Carat Emerald, that Gemdiam consigned to Gholian Enterprises, and agreed to compensate Gemdiam for any loss or damage thereto.

142. The 5.40 Carat Emerald consigned by Gemdiam to Gholian Enterprises, which had the agreed price of $48,600.00, has never been returned, paid for, or otherwise accounted for by Gholian Enterprises or Akush to Gemdiam, despite due demand.

143. Gemdiam has therefore been damaged by Akush's breach of his obligations under the Receipt & Bailment Note in the amount of at least $48,600.00.

## AS AND FOR A FIFTEENTH CLAIM FOR RELIEF
(by both plaintiffs against Gholian and Akush)

144. Plaintiffs repeat the allegations set forth in paragraphs 1 through 143, above, as though they were full set forth herein.

145. Upon information and belief, at all relevant times, Gholian and Akush exercised complete dominion and control over the business and financial affairs of Gholian Enterprises.

146. Upon further information and belief, Gholian and Akush failed to properly maintain the corporate formalities of Gholian Enterprises, in that, among other things, they failed to hold required meetings, keep minutes of their meetings, or to hold required elections for directors and officers of the corporation.

147. Upon further information and belief, Gholian and Akush failed to sufficiently capitalize Gholian Enterprises, with the result that Gholian Enterprises, at all relevant times, lacked sufficient capital to pay its just debts, including its debts to Unique Lotus and Gemdiam.

148. Upon further information and belief, Gholian and Akush failed to strictly maintain the boundary between the assets of Gholian Enterprises and their own personal assets, with the result that their assets and the assets of Gholian Enterprises became intermingled.

149. By failing to properly maintain the corporate formalities of Gholian Enterprises, failing to sufficiently capitalize Gholian Enterprises, and failing to strictly maintain the boundary between the assets of Gholian Enterprises and their own personal assets, Gholian and Akush abused the privilege of conducting business in the corporate form, and thereby perpetrated a fraud on Gholian Enterprises' creditors, including Unique Lotus and Gemdiam.

150. In addition, as the result of their complete domination of Gholian Enterprises,

28

Gholian and Akush were able to further abuse the privilege of conducting business in the corporate form, and to perpetrate a wrong against the plaintiffs, by causing Gholian Enterprises to issue numerous bad checks to Unique Lotus and Gemdiam so that they could acquire gem stones from Unique Lotus and Gemdiam without paying for them in full.

151. Therefore, at all relevant times, Gholian Enterprises was merely the alter ego of Gholian and Akush.

152. The plaintiffs are therefore entitled to pierce Gholian Enterprises' corporate veil, and to have Gholian and Akush held personally liable for the debts which Gholian Enterprises owes to Unique Lotus and Gemdiam, which debts, totaling at least $551,689.09, include at least $304,217.09, that is owed to Unique Lotus, and at least $247,472.00, that is owed to Gemdiam.

**WHEREFORE,** plaintiffs, Unique Lotus Gems and Gemdiam, respectfully demand that the Court make and enter a judgment as follows:

A. Awarding the plaintiffs damages, under the First Claim for Relief, in the total amount of at least $551,689.09, including at least $304,217.09 for Unique Lotus and at least $247,472.00 for Gemdiam, against Gholian Enterprises Inc., Farid Gholian a/k/a Rob Golian and Aharon Akush, together with punitive damages in an amount to be fixed by the Court;

B. Awarding the plaintiffs damages, under the Second Claim for Relief, in the total amount of at least $551,689.09, including at least $304,217.09 for Unique Lotus and at least $247,472.00 for Gemdiam, against Gholian Enterprises Inc., Farid Gholian a/k/a Rob Golian and Aharon Akush, , together with punitive damages in an amount to be fixed by the Court;

C. Awarding Unique Lotus damages, under the Third Claim for Relief, in the amount of at least $304,217.09, against Gholian Enterprises Inc.;

D. Awarding Unique Lotus damages, under the Fourth Claim for Relief, in the amount of at least $304,217.09, against Gholian Enterprises Inc.;

E. Awarding Unique Lotus damages, under the Fifth Claim for Relief, in the amount of at least $304,217.09, against Gholian Enterprises Inc.;

F. Awarding Unique Lotus damages, under the Sixth Claim for Relief, in the amount of at least $303,062.00, against Gholian Enterprises Inc.;

G. Awarding Unique Lotus damages, under the Seventh Claim for Relief, in the amount of at least $303,062.00, against Gholian Enterprises Inc.;

H. Awarding Unique Lotus damages, under the Eighth Claim for Relief, in the amount of at least $112,666.00, against Aharon Akush;

I. Awarding Unique Lotus damages, under the Ninth Claim for Relief, in the amount of at least $40,000.00, against Aharon Akush;

J. Awarding Gemdiam damages, under the Tenth Claim for Relief, in the amount of at least $247,472.00, against Gholian Enterprises Inc.;

K. Awarding Gemdiam damages, under the Eleventh Claim for Relief, in the amount of at least $247,472.00, against Gholian Enterprises Inc.;

L. Awarding Gemdiam damages, under the Twelfth Claim for Relief, in the amount of at least $247,472.00, against Gholian Enterprises Inc.;

M. Awarding Gemdiam damages, under the Thirteenth Claim for Relief, in the amount of at least $247,472.00, against Gholian Enterprises Inc.;

N. Awarding Gemdiam damages, under the Fourteenth Claim for Relief, in the amount of at least $48,600.00, against Aharon Akush;

O. Awarding the plaintiffs damages, under the Fifteenth Claim for Relief, in the total amount of at least $551,689.09, including at least $304,217.09 for Unique Lotus and at least $247,472.00 for Gemdiam, against Gholian Enterprises Inc., Farid Gholian a/k/a Rob Golian and Aharon Akush;

P. Awarding the plaintiffs pre-judgment interest on the damages awarded to them from July 10, 2017;

Q. Awarding the plaintiffs their costs and disbursements in this action; and

R. Awarding the plaintiffs such other, further or different relief as the Court may deem to be just and proper.

Dated: New York, New York
         November 19, 2018

Stuart L. Sanders, Esq.
KAZLOW & KAZLOW
Attorneys for Plaintiffs
237 West 35th Street, 14th Floor
New York, NY 10001
Tel.: (212) 947-2900
Fax: (212) 563-0629
E-mail: ssanders@kazlowandkazlow.com